IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EILEEN PARTIPILO, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Case No. 16 CV 04450 |
| v. ) | Judge Thomas M. Durkin |
| ) | |
| JEWEL FOOD STORE, INC., et al., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND SANCTIONS

Now Comes Eileen Partipilo, Plaintiff, by and through her attorney, Frank B. Ávila of Ávila Law Group LLC, and responds to Defendants' motion to dismiss (Docket 44) and motion for sanctions (Docket 42). For the reasons stated below, Defendants' motions should be denied.

### I. Introduction

Defendants have moved to dismiss certain counts of Plaintiff's First Amended Complaint. Plaintiff has filed a motion for leave to file Plaintiff's Second Amended Complaint *instanter* in which Plaintiff has clarified the allegations against all Defendants, combines the assault and battery counts for ease of reference and clarity, and cleans up the allegations. Plaintiff's Second Amended Complaint also addresses any issues raised in Defendants' motion to dismiss and motion for sanctions. In response to Defendants' motion to dismiss (Docket 44) and motion for sanctions (Docket 42), Plaintiff's tort claim against Jewel-Osco should not be dismissed as Plaintiff has alleged a continuing violation theory in light of the ongoing acts by Defendant Jewel-Osco that has caused Plaintiff harm. This Court has supplemental

jurisdiction over Plaintiff's tort claims. Plaintiff's Second Amended Complaint dismisses Major and Cygan as individual defendants, even though Plaintiff's counsel believed he had a good faith basis to raise continuing violation and equitable tolling arguments based on what may have been revealed in discovery in the case as well as "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." For these reasons, and the reasons stated below, Defendants' motion to dismiss and motion for sanctions must be denied.

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Jackson v. E.J. Branch Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Moreover, a complaint will survive a 12(b)(6) motion if it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) (citations omitted). Plaintiff is not required to present evidence in the complaint. *Hunt v. Dart*, 2010 WL 300397, at *4 (N.D. Ill. Jan. 22, 2010) ("Even after *Twombly* and *Iqbal,* a plaintiff doesn't have to come forward with evidence to survive a motion to dismiss."). "On a motion to dismiss, the issue is not whether a

2

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. Plaintiff Has Not Brought An Equal Pay Act Claim

Defendant argues "Count 2 must be dismissed to the extent it seeks to assert an EPA claim." (Docket 44 at 1, 5.) However, Plaintiff does not bring an equal pay act claim. The reference to the "Equal Pay Act" in the heading of Count II of Plaintiff's First Amended Complaint was a scribner's error and has been corrected in the Second Amended Complaint, which Plaintiff seeks leave to file under a separate pleading.

### IV. Plaintiff's Tort Claims Against Jewel Are Timely

Defendant argues that Plaintiff's tort claims against Jewel are untimely, ignoring the fact that the conduct has continued even to the present (*see* FAC ¶¶ 93-116; *see* Second Amended Complaint ¶¶ 89-113).[1] Defendant even acknowledges that "[a] continuing violation or tort is occasioned by continuing unlawful acts and conduct," (Docket at 6), which Plaintiff has alleged here. Under the continuing violation doctrine, "conduct that falls outside the limitations period is actionable if it is linked with related acts that fall within the period." *Eager v. Commonwealth Edison Co.*, 187 F.Supp.2d 1033, 1037 (N.D.Ill. 2002). For the doctrine to apply, a plaintiff must allege some act occurring within the limitations period. *Young v. Will County Dep't. of Public Aid*, 882 F.2d 290, 292 (7th Cir. 1989). In *Eager*, the defendant argued, similar to Defendants here, "that [the plaintiff] was not even at the workplace from

---

[1] Plaintiff has voluntarily dismissed the tort claims against Major and Cygan. Plaintiff's good faith belief that those claims may be viable are addressed in Section VI(B), below.

3

June 11, 1999, through March 2001, and so no such act is alleged." 187 F.Supp.2d at 1039. The court noted that "[t]his is not in fact clear from the face of the complaint, but Eager does not dispute it. [] However, the argument presupposes that the events occurring after March 5, 2001 cannot be considered." *Id.* The court denied the defendant's motion to dismiss, holding:

> Eager also needs an allegation of actionable conduct within the limitations period, but the defendants do not argue that she lacks such allegations; they only argue that pre-limitations period conduct should be excluded. In any event, she does indeed present sufficient allegations of misconduct within the limitations period . . . , combined with failure of management to restrain this conduct when she complained. Because I allow the earlier allegations of misconduct in on the continuing violations theory, Eager may sue for damages on all the sexual harassment alleged, not just on the post-limitations facts.

*Id.*

Here, it is important to note that Plaintiff's intentional infliction of emotional distress ("IIED") and assault and battery claims against Jewel-Osco are premised in part upon the fact that Jewel-Osco's actions and inactions through the course of numerous years, and even more recently in 2016, caused the harm to Plaintiff. It is this pattern of action and inaction, among other things, by Jewel-Osco that makes up Plaintiff's IIED and assault and battery claims against Jewel-Osco.

In *Lujano v. Cicero*, the plaintiff maintained that the Town of Cicero could be held liable "by virtue of the fact that it was aware of the extreme and outrageous conduct of its officials and yet did nothing to stop it." 691 F.Supp.2d 873, 888 (N.D.Ill. 2010). The *Lujano* court noted:

> Many courts in this District have held that employer inaction under such circumstances is tantamount to authorization of the employee's conduct and is a legitimate basis for holding the employer responsible. *See, e.g., Thomas v. Habitat Co.,* 213 F.Supp.2d 887, 892 (N.D.Ill. 2002) (quotation marks omitted)

4

(noting that courts 'have recognized that management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct'); see also *McPherson v. City of Waukegan,* 379 F.3d 430, 443 (7th Cir. 2004) (quoting *Thomas*); *Quela v. Payco–Gen. Am. Credits, Inc.,* 84 F.Supp.2d 956, 960 (N.D.Ill. 2000).

*Id.* The court held that "[b]ased on the evidence Lujano has offered, a jury could reasonably conclude that the Town's management was aware of the offending conduct and did nothing to stop it." *Id.*

Similarly, here, Plaintiff alleges that "Jewel-Osco failed to take any proper action to prevent further harm to Eileen Partipilo such as preventing Maisonet from working with Partipilo;" "[t]his is the same course of inaction that Jewel-Osco pursued with the incidents between Eileen Partipilo and Ron Major and Rich Cygan;" "Jewel-Osco's . . . refusal to implement changes to ensure the safety of its employees has subjected Eileen Partipilo to . . . assault, and battery, and intentional inflection of emotional distress;" "Jewel-Osco has . . . failed to take effective remedial measures to ensure employees', and Eileen Partipilo's, safety" (*see, e.g.,* Second Amended Compl. ¶¶ 96, 113). The fact that the assaults and batteries, and other conduct that is extreme and outrageous continued through 2016 is important evidence to show that Jewel-Osco's management "was aware of the offending conduct and did nothing to stop it." *Id.* It is this ongoing and pervasive pattern of conduct that gives rise to Plaintiff's IIED and assault and battery claims against Jewel-Osco.

Further, "Illinois courts have said that in many contexts, including employment, repetition of the behavior may be a critical factor in raising offensive acts to actionably outrageous ones." *Pavlik v. Kornhaber*, 326 Ill.App.3d 731, 745–46 (1 Dist.

5

2001) (citing *Pavilon v. Kaferly*, 204 Ill.App.3d 235, 246 (1 Dist. 1990) (noting that "[c]umulatively, this testimony . . . could support a finding that it was outrageous"). "It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be." *Id.* (citing Restatement (Second) of Torts § 46, Comment j (1965) (noting that the "intensity and duration" of the distress may determine whether a pattern of behavior is actionable)). As the court held in *Pavlik*,

> It would be logically inconsistent to say that each act must be independently actionable while at the same time asserting that often it is the cumulative nature of the acts that gives rise to the intentional infliction of emotional distress. Likewise, we cannot say that cumulative continuous acts may be required to constitute the tort but that prescription runs from the date of the first act.

*Id.* The *Pavlik* court went on to hold:

> Because it is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period. At the earliest then, the November 3 phone call or the November 4 letter, as a continuation of the ongoing inappropriate dialogue initiated by Kornhaber toward Pavlik, could be viewed by the trier of fact as the conclusion of the tortious act of defendant and the beginning of the running of the prescriptive period.

*Id.*

In this case, the cumulative nature of Jewel-Osco's actions and inactions, and the actions of its supervisors and management employees, as well as the failure of Jewel-Osco to ensure Plaintiff's safety and freedom from assault and battery and hostile work environment, which has extended from at least 2013 through the present (2016), makes up her claims of IIED and assault and battery against Jewel-Osco. As such,

the continuing violation doctrine applies to Plaintiff's IIED and assault and battery claims, and these claims survive Defendants' motion to dismiss.

The cases cited by Defendants are distinguishable. For example, in *Zitzka v. Village of Westmont*, the court dismissed the plaintiff's IIED claim because the events did not rise to the level of extreme and outrageous: "The two incidents from May 2006—involving two 'extra watches' or 'drive-bys' of plaintiffs' house—were not truly extreme and outrageous. In fact, even combined with the earlier, untimely alleged drive-bys and extra watches of plaintiffs' house, this would not constitute extreme and outrageous conduct under Illinois law." 743 F.Supp.2d 887, 929 (N.D.Ill. 2010). Similarly, in *Wuerffel v. Cook County Sheriff's Office*, the court noted that the plaintiff failed to allege that the individual defendant "continually perpetrated harmful acts." 2016 WL 1660497, at *11 (N.D.Ill., 2016). Here, Plaintiff has alleged facts that Defendant Jewel-Osco continually perpetrated the harmful acts that make up her IIED and assault and battery claims. Therefore, Defendants' motion to dismiss must be denied.

## V. The Court Has Subject Matter Jurisdiction Over Plaintiff's Tort Claims

Court's routinely find that they have subject matter jurisdiction over a plaintiff's tort claims when brought with Title VII or other federal claims. Despite this, Defendants argue that this Court does not have subject matter jurisdiction over Plaintiff's IIED and assault and battery claims. Defendants erroneously argue that "Plaintiff's ability to prove her federal claims based on conduct allegedly occurring in 2013 is completely independent of the tort claims against Jewel, Lazzaro, and/or Maisonet, as those claims are based on discrete acts of Lazzaro and Maisonet alleged to have occurred in 2016." (Docket 44 at 7.) As stated above in Section IV, Plaintiff's ability to prove her IIED and assault and battery claims against Jewel-Osco are dependent on evidence upon which "a jury could reasonably conclude that [Defendant's] management was aware of the offending conduct and did nothing to stop it." See *Lujano*, 691 F.Supp.2d at 888. This evidence includes the ongoing harassment, hostile work environment, assault and batteries by other employees that has gone unaddressed even to this day.

Defendants' reliance on *Eager v. Commonwealth Edison Co.*, 187 F.Supp.2d 1033, 1040 (N.D.Ill. 2002) supports supplemental jurisdiction in this case based on the facts as alleged here. In *Eager*, the court actually held only that it would not maintain supplemental jurisdiction over the plaintiff's electrocution claims: "Counts III (assault and battery) and VIII (negligent infliction of emotional distress), *insofar as they state claims relating to the electrocution*, are dismissed for lack of subject matter jurisdiction." *Id.* (emphasis added). As to the allegations in the complaint in *Eager*

that did not relate to the electrocution, the court found supplemental jurisdiction. The *Eager* court cited the Seventh Circuit's decision in *Ammerman v. Sween,* 54 F.3d 423, 424 (7th Cir. 1995), where the court found supplemental jurisdiction because, "without reference to the facts surrounding the assault, there could have been no sexual harassment claim against the employer." These facts are much more applicable here where the facts underlying Plaintiff's sexual harassment, assault and battery, and IIED claims overlap in terms of the facts that are necessary to prove each of these claims. Here, as noted by the *Eager* court: "[T]he 'factual allegations regarding incidents of physical assault and battery . . . are highly relevant to the determination of whether a hostile work environment existed.'" 187 F.Supp.2d at 1040 (quoting *Lynam v. Foot First Podiatry Centers, P.C.,* 919 F.Supp. 1141, 1148 (N.D.Ill. 1996)).

Defendants' reliance on *Oszust v. Town of St. John* is also unavailing. In *Oszust*, the court declined to exercise supplemental jurisdiction over the plaintiff's Indiana Open Door law violation because the claim was unrelated to the plaintiff's Title VII and First Amendment claims, but more importantly because, as the court noted, "the parties now appear to agree that state adjudication of the state-law claims in this matter is appropriate," and as such, the court declined to exercise jurisdiction over them. 2016 WL 4541131, at *9 (N.D.Ind., 2016). Here, there is overlap of factual allegations, and this Court should retain supplemental jurisdiction over Plaintiff's state law claims of IIED and assault and battery.

9

## VI. There Is No Basis For Sanctions Against Plaintiff or Plaintiff's Counsel

Defendants have also filed a motion for sanctions under Rule 11 against Plaintiff and Plaintiff's counsel based on the fact that Plaintiff's counsel had included tort claims in the First Amended Complaint against the individual defendants Major and Cygan. Defendants' motion should be denied for two reasons: (1) Plaintiff's counsel agreed to (and did) dismiss the IHRA claims; and (2) Plaintiff's counsel had a good faith argument as to why the tort claims against Major and Cygan should have been tolled and were subject to the continuing violation doctrine.

### A. *There Is No Basis for Sanctions as to the Previously Dismissed IHRA Claims*

Defendants argue that "Plaintiff should [] be sanctioned as to the IHRA claim. . . . Plaintiff and her counsel should be sanctioned for continuing to pursue this baseless claim." (Docket 42 at 10.) Defendants fail to substantively acknowledge that Plaintiff's counsel already dismissed the IHRA claims with the filing of the First Amended Complaint. Instead, Defendants hide this fact in a footnote, stating: "It should be noted that the Amended Complaint does not contain any claims under the IHRA." (Docket 42 at 10, n. 3.) Defendants' failure to acknowledge this fact up front and only mentioning it in a footnote in hopes that the Court might miss it is concerning.

Plaintiff dismissed the IHRA claims from this case and corrected the oversight or confusion on the notice of voluntary dismissal. (*See* Dockets 13, 28, and 42-1 at 9 ¶ 6, and 11.) Plaintiff's counsel in fact advised Defendants' counsel that he intended to correct the notice of dismissal to include the IHRA claims. (Docket 42-1 at 11 ("I will

10

be dropping the other IHRA counts and the other supervisors on Title VII.").)[2] Defendants' counsel admitted this fact. (*See* Docket 42-1 at 9 ¶ 6 ("After I informed him of the contents of the notice of voluntary dismissal, he indicated that he intended to correct the notice to clarify that the sexual harassment claim under the IHRA (Count 8) was dismissed in its entirety, and the Title VII and ADEA claims (Counts 1, 2, 3, and 7) were dismissed against Major.").) Despite Defendants' counsel's own admission of the fact that Plaintiff's counsel agreed to dismiss the IHRA counts, Defendants' counsel also fails to advise the Court of this fact in her motion for sanctions. Instead, Defendants falsely claim that "Plaintiffs' counsel did not respond to Defendants' motion before the 21-day period to cure to (*sic*) defective claims had run." (Docket 42 at 4.) In fact, Plaintiff's counsel responded via email on July 19, 2016 that he would be "dropping the other IHRA counts." (Docket 42-1 at 11.) Plaintiff's counsel, the undersigned, was unable to correct the prior notice of voluntary dismissal (Docket 13) until August 24, 2016 (*see* Docket 28) because of health issues. Plaintiff's counsel advised Defendants' counsel that he would be dismissing the IHRA counts prior to Defendants filing their motion for sanctions and motion to dismiss. As such, there is no basis for sanctions under Rule 11 as it was clear to Defendants' counsel that Plaintiff agreed to and intended to and did dismiss the IHRA counts.

---

[2]  Plaintiff's counsel was unable to correct the error earlier because he had some medical issues that put him out of the office. He also advised Defendants' counsel that he was trying to find another attorney to assist with the case (Docket 42-1 at 12) because of his ongoing medical issues.

11

### B. Plaintiff's Counsel Had a Good Faith Basis for Including Defendant Major and Cygan on Plaintiff's IIED and Assault and Battery Claims

Rule 11 provides in relevant part:

By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Fed. R. Civ. P. Rule 11. Rule 11(b)(2) does not allow for sanctions against a party. *See* Rule 11(c)(5) ("The court must not impose a monetary sanction: (A) against a represented party for violating Rule 11(b)(2).").

Plaintiff's counsel had a good faith basis to include Major and Cygan as individual defendants on Plaintiff's IIED and assault and battery claims under continuing violation and tolling theories based on "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." In *Kelley v. Wal-Mart Stores East, LP*, and other cases cited therein and elsewhere, courts have suggested that in certain circumstances the statute of limitations for state law tort claims may be tolled while a Title VII claim is pending before the EEOC. 2013 WL 608030, *3 (S.D.Ala. 2013) (see also cases cited therein). In *Kelley*, the court acknowledged that other courts have tolled the statute of limitations on tort claims when they are based on the same facts and theories, but held based on the facts in

12

that case that "even if the statute of limitations should be tolled during the pendency of an EEOC proceeding when the state law claims are based on the same facts and theories, the state law claims in this case would not be tolled because they are separate and distinct." *Id.* at *6. Here, Plaintiff's tort claim against Major and Cygan were based on the same facts and theories as Plaintiff's Title VII claims, and thus, there was a good faith basis to their inclusion in the complaint.

Furthermore, statute of limitations is an affirmative defense, and generally is not something that can be decided on a motion to dismiss. *See Moore v. Morales*, 415 F.Supp.2d 891, 894 (N.D.Ill. 2006) ("The statute of limitations, however, is an affirmative defense and 'is rarely a good reason to dismiss under Rule 12(b)(6).'"). As the court held in *Moore*:

> In a motion to dismiss, the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations. A plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint. Moore asserts four theories that, if proven, would establish a defense to the statute of limitations: the discovery rule, fraudulent concealment, equitable estoppel, and equitable tolling.

*Id.* (internal citations and quotation omitted).

In this case, Defendants have not yet answered Plaintiff's complaint, so Plaintiff has not been entitled to discovery that could have revealed additional facts (other than the fact that the tort claims against Cygan and Major are based on the same facts and theories) to support her tolling and continuing violation theories against them individually. Plaintiff also does not know to what if any extent Cygan and Major may have been involved in the ongoing harassment and retaliation against Plaintiff, or what part they took in management's decision to not take effective remedial action to end the

13

harassment, discrimination, retaliation, IIED, and assault and batteries against Plaintiff. As supervisors and managers, it is not beyond the realm of reality that they my have continued to have been involved even once Major was transferred. Regardless of the above, Plaintiff has dismissed Major and Cygan from her Second Amended Complaint, which Plaintiff is seeking leave to file in conjunction with this response. Sanctions under Rule 11 is not warranted and would be inappropriate in light of the facts and legal authority cited above.

## VII. Conclusion

Wherefore, for the above stated reasons, Eileen Partipilo, Plaintiff, requests that this Court deny Defendants' motion to dismiss and motion for sanctions, and grant Plaintiff such other relief that is just and equitable.

By: s/Frank B. Avila
Ávila Law Group, LLC
Attorneys for Plaintiffs
6601 N. Avondale Avenue, Suite 203
Chicago, IL 60631
frankavilalaw@gmail.com
773-671-3480 telephone