UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EILEEN PARTIPILO,<br><br>    Plaintiff,<br><br>    v.<br><br>JEWEL FOOD STORES, INC; MIKE LAZZARO; and MARY MAISONET,<br><br>    Defendants. | No. 16 C 4450<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Eileen Partipilo alleges that her employer, Jewel Food Stores, Inc., denied her promotions and favorable hours because she is a woman and older than 40 years of age (Counts II & IV), and retaliated against her for complaining about this discrimination, (Count I), in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2, e-3. *See* R. 52-1. Partipilo also alleges Jewel is liable for the hostile work environment created by Partipilo's former supervisor, Ron Major (who is not a defendant) (Count III). Partipilo also claims her current supervisor, Mike Lazzaro, and co-worker Mary Maisonet separately assaulted her in violation of state law, and that Jewel is vicariously liable for these actions (Count VI). Lastly, Partipilo alleges that Jewel's tolerance of Lazzaro's, Maisonet's, and Major's actions amounts to intentional infliction of emotional distress in violation of state law (Count V). Jewel has moved to dismiss the assault and intentional infliction of emotional distress claims for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6). R. 60. (The other four counts are not at issue on this motion.) Jewel has also moved for sanctions against Partipilo and her counsel. R. 41. For the following reasons, both motions are granted in part and denied in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## Background

Partipilo is 58 years old and since 1977 has worked for Jewel at its store at 2520 Narragansett Avenue in Chicago. R. 52-1 ¶¶ 4, 9. In 2013, Partipilo worked in the produce department and her manager was Ron Major. *Id.* ¶ 16. Partipilo alleges that she "was passed over for favorable hours and higher paying weekend days" because of her age and because she is a woman. *Id.* ¶ 15. Partipilo told Major that she planned to complain to the store manager, Rich Cygan, and the union, if Major did not give her the hours she wanted. *Id.* ¶ 17. Major allegedly responded that he would make Partipilo's job "a living hell" if she complained. *Id.* ¶ 18. To that end, Major allegedly used a watermelon to pretend to perform oral sex on Partipilo, while making lewd comments, and on another occasion rubbed his hips against her. *Id.* ¶¶ 22-23. On yet another occasion, Major allegedly commented that yogurt stains on Partipilo's shirt looked like semen and made a gesture insinuating someone had ejaculated on her. *Id.* ¶ 27. Partipilo complained to store manager Cygan about Major's lewd behavior. Cygan said he would talk to Major about these incidents but told Partipilo not to file a grievance. *Id.* ¶¶ 25-26.

In March 2013, Major continued to made "derogatory and defamatory remarks" to Partipilo, and told her that he would not give her the hours she requested because she would not acquiesce to his sexual advances and because she complained to Cygan. *Id.* ¶ 33. Partipilo again complained to Cygan, and Cygan promised to force Major to assign her to the hours she requested. *Id.* ¶ 35. When Major learned of this, he screamed at Partiplo, using foul language; berated her for

"going behind my back"; and demanded that she listen to him and follow the schedule he set. *Id.* ¶¶ 39, 43. This encounter caused Partipilo "to cry, tremble, and fear for her life," and triggered an asthma attack. *Id.* ¶ 41. Partipilo gave Cygan a written statement about the incident and Cygan reported it to Jewel's district manager. *Id.* ¶¶ 48-49. Nevertheless, Major continued to supervise Partipilo. *Id.* ¶ 53.

Several days later, Major again threatened revenge against Partipilo because of her complaints to management. *Id.* ¶ 54. Several days after that, Major allegedly approached Partipilo in a "backroom" of the store, pressed his hips against her, smiled at her, told her that "he was trying to get a knife," and that she should be careful. *Id.* ¶¶ 56-58. Partipilo again complained to Cygan, who responded that Jewel was investigating her allegations and that Partipilo should try to avoid being alone with Major for the time being. *Id.* ¶ 59. Major continued to make offensive comments toward Partipilo, of both a sexual and otherwise derogatory nature, through April and May 2013. *Id.* ¶¶ 60-61. Another Jewel employee, James Conduti, complained to Jewel that Major was being hostile and inappropriate to Partipilo. *Id.* ¶ 62.

In April 2013, a Jewel human resources staff member contacted Partipilo in the course of investigating Conduti's complaint about Major. During their conversation, Partipilo inquired about her prior complaints about Major, and the staff member said she was unaware of any complaints other than Conduti's. *Id.* ¶¶ 65-67.

4

Major was transferred to another store in May 2013. *Id.* ¶¶ 70-71. Partipilo filed a complaint with the Equal Employment Opportunity Commission on September 5, 2013. *Id.* ¶ 74. More than two years later, the EEOC issued a right to sue letter on January 21, 2016. *Id.* ¶ 88. Partipilo filed this case on April 19, 2016. R. 1.

After Partipilo filed her original complaint in this case (and more than three years after her conflicts with Major), Partipilo's co-worker, Mary Maisonet allegedly began making sexual gestures and sexual comments to Partipilo on July 21, 2016. R. 52-1 ¶ 89. Specifically, on July 27, 2016, Maisonet made "humping and grinding gesture" in front of Partipilo and several other employees. *Id.* ¶ 91. Maisonet also allegedly told Partipilo that she "did not have an ass," and should try anal sex because it would cause her ass to grow. *Id.* ¶ 92. Maisonet warned Partipilo that anal sex would hurt at first but that she would eventually enjoy it. *Id.* ¶ 93. Partipilo complained to her manager about these incidents, and the manager promised to speak with Maisonet. *Id.* ¶ 95.

Partipilo continued to be assigned to work with Maisonet. *Id.* ¶ 96. On August 2, 2016, Partipilo was in "the backroom of the produce department" with two other employees when Maisonet approached her with a banana and told Partipilo that she wanted to stick the banana up Partipilo's "hole." *Id.* ¶¶ 97, 99. Partipilo again complained to her manager, and called Jewel's "employee hotline." *Id.* ¶¶ 100-01.

5

On October 8, 2016, Partipilo was working in "the backroom of the farm stand department" when her assistant manager Mike Lazzaro approached her and started screaming at her about what tasks she should be performing. *Id.* ¶ 102. When Partipilo asked Lazzaro to repeat his instruction, he allegedly "began punching her with both of his fists in her groin area, legs, and stomach." *Id.* ¶ 104. Another employee, Richie Wendland, witnessed this incident. *Id.* ¶ 105. Partipilo was left in "complete panic, shock, and fear," but she was able to ask Lazzaro why he had hit her. *Id.* ¶¶ 106-07. Lazzaro answered that he was joking around. *Id.* ¶ 108. Partipilo reported this incident to the store director, but she has continued to be assigned to work with Lazzaro. *Id.* ¶¶ 110-11.

Partipilo alleges that Major's, Maisonet's, and Lazzaro's conduct caused her emotional distress, that claims that Jewel is liable based their conduct for intentional infliction of emotional distress because Jewel knew about the conduct and failed to adequately respond. (Partipilo does not bring claims against Major, Maisonet, or Lazzaro individually for intentional infliction of emotional distress.) Partipilo also alleges that Mainsonet and Lazzaro assaulted and/or battered her. She brings claims against them for this conduct, and also claims that Jewel is vicariously liable for their actions.

**Analysis**

I.  **Intentional Infliction of Emotional Distress**

Partipilo argues that Jewel is liable for intentional infliction of emotional distress for failing to take action to address Major's, Maisonet's, and Lazzaro's

6

conduct. Under Illinois law, for an intentional infliction of emotional distress claim to be successful, the following elements must be proven: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen–El*, 602 F.3d at 864 (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). In determining whether conduct meets the "extreme and outrageous" standard, courts consider three main factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme"; (2) "whether the defendant reasonably believed its objective was legitimate"; and (3) "whether the defendant was aware the plaintiff was 'peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003) (quoting *McGrath v. Fahey*, 533 N.E.2d 806, 811 (Ill. 1988)). The Illinois Supreme Court has explained, "Conduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (Second) of Torts § 46, cmt. D, at 73 (1965)). The Seventh Circuit has explained that in the

7

employment context in particular, "Illinois courts have found extreme and outrageous behavior to exist . . . when the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006).

### A. Major's, Maisonet's, and Lazzaro's Conduct

As an initial matter, none of Partipilo's allegations against Major, Maisonet, or Lazzaro separately supports a claim for intentional infliction of emotional distress, because a claim against Major would be untimely, and Maisonet's and Lazzaro's alleged conduct is not extreme and outrageous. With respect to Major's conduct, in the context of a supervisor-subordinate relationship, sexual harassment and physical contact with Partipilo, which escalated to a threat of violence, is likely sufficient to plausibly demonstrate the "extreme and outrageous" conduct necessary to state a claim for intentional infliction of emotional distress. Numerous cases have found similar conduct sufficient to meet that standard. *See Redman v. Gas City, Ltd.*, 2007 WL 869561, at *4 (N.D. Ill. Mar. 21, 2007) ("constant, uninvited, unwelcome, shocking and lewd sexually charged comments from manager"); *Spahn v. Int'l Quality & Productivity Ctr.*, 211 F. Supp. 2d 1072, 1075 (N.D. Ill. 2002) ("incidents of inappropriate and offensive sexual comments, unwelcome and unwanted sexual advances, and numerous occasions of harmful and offensive touching by their superior"); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 961 (N.D. Ill. 2002) (the plaintiff alleged that she was "subjected to a repeated

8

pattern of sexual harassment for almost six years, including inappropriate comments, gestures and conduct by male supervisors"); *Adan v. Solo Cup, Inc.*, 2001 WL 951726, at *1-3 (N.D. Ill. Aug. 17, 2001) (unwelcome sexual advances, unwelcome comments containing sexual innuendos, and repeated requests and propositions for sexual behavior by plaintiff's supervisor). However, the last of Major's alleged bad acts occurred no later than May 2013 and Partipilo did not file this case until nearly three years later on April 19, 2016. R. 1. Thus, this conduct is outside Illinois's two-year statute of limitations for a claim of intentional infliction of emotional distress, *see Casey-Beich v. United Parcel Serv., Inc.*, 295 Fed. App'x 92, 95 (7th Cir. 2008), and is no longer actionable since the filing of an EEOC complaint does not serve to toll the statute of a "separate and independent" state-law claim. *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 322-23 (7th Cir. 1992).[1]

Furthermore, neither Maisonet's nor Lazzaro's conduct is "extreme and outrageous." Vulgar insults and innuendo, like the comments Maisonet allegedly directed against Partipilo, are generally insufficient to state a claim for intentional infliction of emotional distress. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1174 (7th Cir. 1997) ("Mere insults, indignities, threats, annoyances, petty oppressions or trivialities, as well as acts which are only inconsiderate, rude, vulgar,

---

[1] If Partipilo's intentional infliction of emotional distress claim based on Major's conduct were not "separate and independent" from her civil rights claim (the statute of limitations for which is based on the date she received a decision from the EEOC), it would almost certainly be "inextricably linked" to her civil rights claim, such that it would be preempted by the Illinois Human Rights Act. *See Hernandez v. Cook Cnty. Sheriff's Office*, 76 F. Supp. 3d 739, 744-48 (N.D. Ill. 2014).

9

uncooperative, unprofessional and unfair, do not constitute conduct which is actionable under a theory of intentional infliction of emotional distress." (internal citations omitted)); *Ponticiello v. Aramark Unif. & Career Apparel Servs., Inc.*, 2006 WL 2699416, at *12 (N.D. Ill. Sept. 19, 2006) ("Plaintiff alleges that she endured offensive and humiliating taunts and jokes for the more than three and a half years that she worked at Aramark from 2000 to 2004. But this conduct, while perhaps vulgar or disgusting, is not outrageous enough to meet the standard for IIED."). It is true that allegations of repeated unwelcome sexual advances and threats, and certainly offensive touching of a sexual nature, can suffice to plausibly demonstrate extreme and outrageous conduct. But Partipilo does not allege that Maisonet engaged in such conduct. Rather, Partipilo at most alleges that Maisonet engaged in bawdy talk. To the extent Maisonet's statement that she would stick a banana in Partipilo's "hole" was an actual threat and not merely a disgusting joke, it is an isolated threat that cannot support a claim for intentional infliction of emotional distress. *See Santiago v. Patel*, 2015 WL 6756286, at *3 (N.D. Ill. Nov. 5, 2015) ("mere threats ordinarily are insufficient to establish outrageous conduct" (citing *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976)).

Similarly, Partipilo's allegation that Lazzaro "punched" her on one occasion does not demonstrate extreme and outrageous conduct. A number of cases have found similar allegations of physical contact insufficient to demonstrate intentional infliction of emotional distress. *See Miller v. Equitable Life Assurance Soc'y of the U.S.*, 537 N.E.2d 887, 888-90 (Ill. 1989) (co-worker "hit and threw coffee at" the

plaintiff, and that "co-workers touched [the plaintiff's] breast"); *Stokes v. John Deere Seeding Grp.*, 2014 WL 859528, at *1-2 (C.D. Ill. Mar. 5, 2014) (defendant "threw a set of keys at [the plaintiff], which struck her chest," "rode over [the plaintiff's] heel with his bicycle," and nearly hit the plaintiff while riding a bicycle); *Poulos v. Village of Lindenhurst*, 2002 WL 31001876, at *3, 17 (N.D. Ill. Sept. 3, 2002) (parties engaged in a "physical altercation" and defendant "bumped" plaintiff's car from behind with a truck).

### B. Jewel's Conduct

#### 1. Liability for Employees' Conduct

Partiplilo argues that Jewel is liable for intentional infliction of emotional distress because it failed to take action to address the conduct of the three employees at issue here—Major, Maisonet, and Lazzaro. *See* R. 66 at 13. There is authority supporting the theory that, in addition to the more common basis of vicarious liability, an employer can be held liable for its employees' tortious conduct if the employer knows about the conduct and fails to take remedial action. *See McPherson v. City of Waukegan*, 379 F.3d 430, 443 (7th Cir. 2004) ("[The plaintiff] concedes that the [defendant] cannot be liable under a respondeat superior theory for [the defendant's employee's] tortious acts. Instead, [the plaintiff] argues that . . . management knew that [the employee] was making comments about the color of the female office workers' bras and did nothing, thus expressly authorizing his actions and creating an environment in which those actions were permitted to escalate."). But Partipilo is not actually seeking to hold Jewel liable for its employees' conduct.

11

By dropping her claims against Major and not bringing intentional infliction of emotional distress claims against Maisonet and Lazzaro, Partipilo is implicitly admitting what the Court has already explicitly held: any such claims against Major are time-barred, and Maisonet's and Lazzaro's alleged conduct is not extreme and outrageous. Rather, Partipilo argues that Jewel's failure to remedy its employees' tortious conduct is extreme and outrageous in and of itself. Partipilo, however, cites no authority for that reasoning.[2] Since Partipilo has failed to allege any underlying tortious conduct for which Jewel can be held liable, Partipilo has failed to state a claim against Jewel.

## 2. Continuing Violation

As the Court noted, Major's conduct likely rises to the "extreme and outrageous" level. So Partipilo attempts to save her intentional infliction of emotional distress claim against Jewel by using the continuing violation doctrine to link Major's conduct to that of Maisonet and Lazzaro. Partipilo contends that even if Mainsonet's and Lazzaro's conduct is not extreme and outrageous when taken separately, it "can reach the necessary level of egregiousness when taken as a whole" with Major's conduct. R. 66 at 5. On the logic of this argument, Jewel is the "actor" who is responsible for the conduct "as a whole."

---

[2] To the extent Partipilo's allegations against Jewel might state a claim for a failure to act reasonably in hiring, supervising and retaining Major, *see Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643 (7th Cir. 2017), that claim would also be untimely under the two-year statute of limitations applicable to personal injuries provided by 735 ILCS 5/13-202. *See Parks v. Kownacki*, 737 N.E.2d 287, 292, 294 (Ill. 2000) (applying 735 ILCS 5/13-202 to a claim for negligent supervision); *Antonson v. United Armored Servs., Inc.*, 2002 WL 221605, at *5 (N.D. Ill. Feb. 12, 2002).

The continuing violation doctrine applies "where the tort involves continuous or repeated injurious behavior, by the same actor and of a similar nature." *Taylor v. Bd. of Educ. of City of Chi.*, 10 N.E.3d 383, 395 (Ill. App. Ct. 1st Dist. 2014) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 87 (Ill. 2003)). None of these factors, however, describe Partipilo's allegations against Jewel. As Partipilo notes, the principal Illinois case applying the continuing violation doctrine to a claim of intentional infliction of emotional distress, concerns a "pattern" of spousal abuse. *See Feltmeier*, 798 N.E.2d at 83. In *Feltemeier*, one individual—the plaintiff's husband—inflicted similar forms of abuse against the plaintiff over the course of a decade, and the Illinois Supreme Court found that the continuing violation doctrine applied to make actionable claims based on the entire ten year period of abuse. *Id.*

In contrast to the facts in *Feltmeier*, three different individuals allegedly harassed Partipilo, and the allegations against each individual are distinctive and largely unrelated. Partipilo contends that Jewel is the "same actor" linking the three instances of alleged harassment. Partipilo, however, cites no authority in support of her reasoning that the continuing violation doctrine can be used to implicate a defendant who is not otherwise liable for the conduct in question. Partipilo's only legal theory to link Jewel to actions committed by its employees is the theory that employers can be liable for failing to address their employees' tortious conduct. As discussed, however, this theory only serves to expand the scope of an employer's liability for its employees' actions; it is not a theory that expands the type of conduct that is actionable in the first place. Major's, Mainsonet's, and

13

Lazzaro's conduct is not actionable as intentional infliction of emotional distress for the reasons already discussed, and Partipilo has cited no authority that an employer's failure to address its employees' bad conduct itself constitutes intentional infliction of emotional distress. Absent such authority, Jewel cannot serve as the common actor under the continuing violation doctrine to link the conduct of Major, Maisoner, and Lazzaro, and make it actionable. And in any event, there is simply no continuity between actions occurring more than three years apart. The continuing violation doctrine is inapplicable to Partipilo's allegations as they stand with respect to her claim of intentional infliction of emotional distress against Jewel.

Therefore, for all these reasons, Partipilo's claim of intentional infliction of emotional distress against Jewel is dismissed.

## II. Assault and Battery

### A. Jewel's Vicarious Liability

Jewel argues that Partipilo has failed to plausibly allege that Jewel is vicariously liable for Maisonet's and Lazzaro's alleged assaults and batteries. "An employer may be vicariously liable for the tort of an employee if the tort is committed within the scope of the employment." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016) (citing *Bagent v. Blessing Care Corp.,* 862 N.E.2d 985, 991 (Ill. 2007)). "For conduct to be within the scope of employment it must: (1) be of the kind the employee is employed to perform; (2) occur substantially within the authorized time and space limits; and (3) be performed, at least in part, by a

purpose to serve the master." *Boston*, 816 F.3d at 467. "Where the motive for the employee's tort is personal and solely for the benefit of the employee, the employer is not subject to liability." *Id.* (citing *Wright v. City of Danville,* 675 N.E.2d 110, 118 (Ill. 1996)).

Partiplio makes no argument as to how Maisonet's or Lazzaro's allegedly tortious conduct—Maisonet's vulgar and bawdy talk, and Lazzaro's punches—could plausibly be construed as actions taken in service of Jewel. Partiplio has made no allegation that Jewel actively encourages such behavior by its employees, or that such behavior would benefit Jewel in any way. Therefore, the assault and battery claim against Jewel is dismissed.

### B. Subject Matter Jurisdiction

Maisonet and Lazzaro also argue that the assault and battery claims against them should be dismissed because exercise of supplemental jurisdiction over those claims is not proper. *See* R. 61 at 13. Under 28 U.S.C. § 1367(a), a federal district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." "District courts may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly before the court," *Olson v. Bemis Co.*, 800 F.3d 296, 302 (7th Cir. 2015), "such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Zabkowicz v. W. Bend Co., Div. of Dart Indus.*, 789

F.2d 540, 546 (7th Cir. 1986) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, (1966)).

Jewel cites authority holding that the "mere fact that claims arise from the same employment relationship is insufficient to warrant the exercise of supplemental jurisdiction." R. 61 at 14 (citing *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005) (collecting cases)). As discussed, Partipilo's allegations are insufficient to invoke the continuing violation doctrine to join Major's conduct to that of Maisonet and Lazzaro in a claim for intentional infliction of emotional distress against Jewel. But Partipilo also brings a hostile work environment claim, which the parties have not addressed in briefing this motion. It may be that the alleged acts from 2013 and 2016 can combine to form a hostile work environment under Title VII. As the parties have not briefed this issue, and the Court contemplates it as a reasonable possibility, the Court will not dismiss the assault and battery claims for lack of supplemental jurisdiction.

### III. Sanctions

Defendants argue that Partipilo and her counsel should be sanctioned for continuing to pursue certain claims through the first amended complaint in the face of defense counsel's notice that these claims are frivolous. Defendants argue that the following claims are frivolous: (1) time-barred tort claims; (2) Title VII claims against an individual; and (3) unpreserved claims under the Illinois Human Rights Act ("IHRA").

Partipilo filed her original complaint on April 19, 2016. Nearly four months later on July 6, 2016, in response to a letter from defense counsel dated June 8, 2016 citing authority demonstrating that some of Partipilo's claims were frivolous, *see* R. 42-1 at 2-5, Partipilo voluntarily dismissed some, but not all, of her Title VII claims against individuals and unpreserved IHRA claims. R. 14. Later on July 19, 2016, Partipilo's counsel told defense counsel that Partipilo would be dismissing the remaining Title VII claims against individuals and unpreserved IHRA claims, *see* R. 42-1 at 11-13, but she never did so. On July 25, 2016, defense counsel sent Partipilo's counsel notice that Defendants would file a motion for sanctions if the remaining claims in question were not voluntarily dismissed. *See* R. 42-1 at 15. Plaintiff's counsel then failed to appear at a status hearing on August 12, 2016. R. 20. Partipilo never actually dismissed the claims her counsel said she would, so Defendants filed a motion to dismiss and a motion for sanctions on August 16, 2016. *See* R. 21; R. 24. Partipilo responded by voluntarily dismissing the Title VII claims against individuals on August 24, 2016, but continued to pursue the unpreserved IHRA claims. R. 30. A month later on September 25, 2016, Partipilo sought leave to file an amended complaint, which was eventually filed on October 25, 2016. R. 38. The amended complaint did not include the unpreserved IHRA claims. *See id.* The amended complaint still contained tort claims Defendants contended are time-barred. *See id.* Defendants filed another motion to dismiss on November 18, 2016. R. 43. Partipilo again sought leave to file a second amended complaint on December 28, 2016, which the Court granted. The second amended complaint, filed more than

17

eight months after the original complaint, did not contain the tort claims Defendants argued are time-barred.

The Court is unconcerned with Partipilo's decision to continue to pursue through the first amended complaint the tort claims Defendants contend are untimely. Partipilo argues that she had a non-frivolous argument to apply the continuing violation doctrine to these claims. It is not so apparent that this argument is incorrect that the Court considers it frivolous. Therefore the Court denies Defendants' motion for sanctions with respect to Partipilo's continued pursuit of these claims.

The Title VII and unpreserved IHRA claims are another matter. The fact that supervisors do not "fall within Title VII's definition of an employer," is a simple and straightforward rule. *See Sattar v. Motorola Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998) ("It is by now well established in this court that a supervisor does not, in his individual capacity, fall within Title VII's definition of employer."). Similarly, the requirement that a plaintiff notify the Illinois Department of Human Rights about an EEOC right to sue letter in order to sue under the IHRA, is a rule Plaintiff's counsel could easily have confirmed with minimal legal research. *See* 775 ILCS 5/7A-102 ("the Department shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination"); *Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 696 (N.D. Ill. 2012). These claims were obviously frivolous. Additionally, Plaintiff's counsel ignored defense counsel's repeated communications of these facts over the

course of two months, and failed to appear at a court hearing at which Plaintiff's counsel could have taken the opportunity to voluntarily dismiss these claims. Plaintiff's counsel's decision not to address these issues culminated in Defendants incurring the expense of filing a motion to dismiss these claims and a motion for sanctions. Absent Plaintiff's counsel's decision to continue to pursue legal claims that were obviously flawed and frivolous, Defendants would not have had to incur these expenses. Thus, Plaintiff's counsel (not Partipilo) must pay defense counsel's fees for preparing and filing the motion to dismiss and motions for sanctions Defendants filed on August 21, 2016.

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss, R. 60, is granted in that Count V is dismissed, and Count VI against Jewel is dismissed. The motion is denied in that Count VI against Maisonet and Lazzaro remains.

Defendants' motion for sanctions, R. 41, is granted. Defense counsel shall prepare an itemization of the attorney time and costs associated with the motion to dismiss and motion for sanctions filed on August 21, 2016, and serve it on plaintiff's counsel by May 5, 2017. After receiving the itemization, Plaintiff's counsel must either pay the amount sought or file an objection with the Court by June 2, 2017.

Additionally, the docket continues to list Richard Cygan and Ron Major as defendants. Partipilo amended her complaint to drop Cygan and Major as defendants and replace them with Mike Lazzaro and Mary Maisonet. *See* R. 52-1. The Clerk is directed to amend the docket accordingly.

ENTERED:

_/s/ Thomas M. Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: April 27, 2017